J-S28031-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: M. M., FATHER | : | |
| | : | |
| | : | No. 957 EDA 2021 |

Appeal from the Decree Entered April 20, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0000238-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: A.Z.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: M.A.M. A/K/A M.M. A/K/A M.M., FATHER | : | |
| | : | |
| | : | No. 958 EDA 2021 |

Appeal from the Order Entered April 20, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000376-2020

BEFORE:  BOWES, J., DUBOW, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:          **FILED OCTOBER 4, 2021**

M.M. (Father) appeals from the decree and order entered in the Court of Common Pleas of Philadelphia County (trial court) involuntarily terminating his parental rights to his daughter A.M., born in September 2015 (Child), as

---

[*] Retired Senior Judge assigned to the Superior Court.

well as changing Child's goal from reunification to adoption. We affirm the decree and order of the trial court.[1]

## I.

## A.

The relevant facts and procedural history of this case are as follows. The Philadelphia Department of Human Services (DHS) became involved with the family in February 2019 because of the parents' history of drug and alcohol abuse, domestic violence, homelessness and Mother's struggle with mental illness. At that point, Child had been residing with a family friend, M.S., since June 2018 through a family arrangement. When Father became aware of M.S.'s intent to file for legal custody of Child in February 2019, he abruptly removed Child from her care, although he had not visited Child for over a month. Child was adjudicated dependent shortly thereafter and returned to the care of M.S. Although Father indicated his willingness to enter a drug and alcohol rehabilitation program, he tested positive for cocaine.

Child began living with her current foster parents E.T. and T.T. (Foster Parents) in April 2020. A petition seeking termination of the parental rights of Father and Mother to Child was filed on February 16, 2021.

---

[1] The parental rights of K.M. (Mother) to Child were involuntary terminated and she is not a party to this appeal.

**B.**

The trial court held a hearing on the petition on March 9, 2021. DHS Case Manager Markeeta Giles (Ms. Giles) testified that Father's objectives were to participate in drug and alcohol treatment, attend parenting classes and supervised visits with Child, eliminate family violence and engage in domestic violence treatment. She testified as follows regarding Father's efforts: Father had unsuccessful discharges from multiple drug treatment programs and provided DHS with no documentation of consistent drug treatment, participation in domestic violence counseling, adequate housing or proof of employment. Although 20 supervised visits with Child were offered to Father, he attended only 12. During the sessions Father did attend, he appeared to be under the influence of drugs or alcohol and/or exhibited inappropriate behavior towards Child.

Ms. Giles described one incident when Child's leggings were falling down where Father "raised his hand and said he was going to smack her on her bum because she was not letting him pull up her pants[.]" (N.T. Hearing, 3/09/21, at 65). Although Father completed a parenting class, Ms. Giles remained concerned about his erratic behavior during visits and his overt impatience with Child, which he displayed through banging on the table they were sitting at or some similar conduct. (**See id.** at 66).

Ms. Giles testified that Father never provided documentation of employment. She said that he told her he works in construction and takes

jobs here and there, but he never provided any pay stubs or other documentation. He also never presented with housing appropriate for reunification. Ms. Giles said Father provided her with several addresses, but she was never able to assess any of them. One of these addresses was Solution House, which is a recovery home, but when she went to Solution House, they informed her that he was only there sporadically. Father later reported that he moved to a work house, but she never received an address and, in any event, a work house would not be appropriate for reunification. Father provided her with an additional address, which Ms. Giles made several attempts to see, but no one ever answered the door when she went to check it out. When she had attempted to contact Father recently, she was unable to contact him at the phone number she had for him.

Ms. Giles acknowledged that Child was excited to see Father at their meetings. However, she explained that they share a "fun bond" rather than a parent/child bond and that "she can have a good time, play, run," but that at the end of the visits, she is ready to go home with Foster Parents who she calls "Mom and Dad." (*Id.* at 67). Ms. Giles further opined that there would be no irreparable harm to Child if Father's rights were terminated because she did not look to him for love or affection and that these needs were instead met by Foster Parents.

Ms. Giles described Child as "doing amazing" with Foster Parents and described her as calm, happy, pleasant, comfortable and able to follow

directions. (*Id.* at 53). Child's behavior has improved significantly since she moved into their home and Ms. Giles has "observed the bonding, the love, the hugs" between Child and Foster Parents. (*Id.* at 54). Child was attending pre-kindergarten at a Catholic school at the time of the hearing and Foster Parents have taken her to therapy to address her initial behavior which had been "uncontrollable at times." (*Id.* at 55). Ms. Giles opined that a goal change to adoption was in Child's best interests because of "the bond, the love, the affection . . . [Child] even speaks to me about being adopted." (*Id.* at 57).

The hearing was continued until April 20, 2021, at which time Father testified that he has resided with his son's mother, his niece and his stepdaughter at a home in Philadelphia since December 2020. He explained that DHS had not been able to evaluate his home for safety because of the COVID-19 pandemic. Father averred that he owns three properties that generate rental income, and that he is self-employed as a master plumber and contractor. Father indicated that he participated in several substance abuse treatment programs and that he continued to attend treatment meetings six days per week, as well as a domestic violence program. Father testified that he is ready, willing and able to care for Child and that he "tr[ies] to take advantage of every minute we have [together]." (N.T. Hearing, 4/20/21, at 23). Father indicated that DHS never asked him to provide documentation of his drug screens or participation in treatment programs.

Ms. Giles testified on rebuttal that Father's two visits with Child since the March hearing went very poorly, and that he exhibited signs of being under the influence of controlled substances and displayed impatient, erratic behavior. For example, Father attempted to "spank [Child] on her bum" during the first visit because she was not listening to him and he angrily repeatedly told her "I am your Father" and cursed during the second visit. (*Id.* at 47-48).

The trial court issued a decree involuntarily terminating Father's parental rights pursuant to 23 Pa.C.S. §§ 2511(a)(1), (2), (5), (8) and (b) and an order changing Child's goal to adoption. In doing so, the trial court noted that Ms. Giles has "taken pains to observe" the parents with Child and it found her testimony regarding the lack of parental bond between Father and Child highly credible and Father's testimony indicating otherwise "made up and not believable." (*Id.* at 51-52). Because Father did not occupy a parental role in Child's life and Child's parental bond is with Foster Parents, who she is thriving with, the trial court concluded that Child would not suffer irreparable harm if Father's parental rights were terminated but, instead, the Child's emotional, physical and developmental needs would be served by termination of his parental rights.

Father then timely appealed and he and the trial court complied with Rule 1925. *See* Pa.R.A.P. 1925(a)(2)(i)-(ii).

**II.**

**A.**

Father challenges the trial court's termination of his parental rights to Child and the goal change to adoption.[2] Father claims he has made substantial progress towards fulfilling case objectives because he completed a parenting class, participates in domestic violence counseling, has gainful self-employment and suitable housing. Father maintains that DHS failed to establish that termination is in Child's best interests where Ms. Giles acknowledged that Child enjoyed her visits with him and that they share a bond. According to Father, the goal change to adoption was unwarranted because reunification remains a viable goal given his progress.

Section 2511 of the Adoption Act governs termination of parental rights and requires a bifurcated analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence

---

[2]

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result.

*Interest of S.S.*, 252 A.3d 681, 685 (Pa. Super. 2021) (citations omitted).

that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

To affirm a termination decree, we must agree with the trial court as to any one subsection of Section 2511(a) in addition to Section 2511(b).

*Interest of S.S.*, *supra* at 685–86 (case citations omitted).

The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in the relevant subsections of Section 2511(a). *See Interest of A.M.*, 2021 WL 2697425 at *4 (Pa. Super. filed July 1, 2021).

In this case, the trial court terminated Father's rights pursuant to Sections 2511(a)(1),(2),(5), (8), and (b), which provide as follows:

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

- 8 -

* * *

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

* * *

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

* * *

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1),(2),(5), (8) and (b).

We give great deference to the trial court's credibility determinations because it observed the parties first-hand. *See In re Q.R.D.,* 214 A.3d 233, 239 (Pa. Super. 2019). "[T]he trial court is free to believe all, part, or none

of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *Id.* (citation omitted). This Court has emphasized that "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities." *Interest of D.R.-W.*, 227 A.3d 905, 914 (Pa. Super. 2020) (citation omitted). Additionally, courts considering termination must examine whether the Child is in a pre-adoptive home and whether the Child shares a bond with the foster parents. *See id.* at 916.

The trial court here reasoned that termination of Father's parental rights was warranted and in Child's best interests because:

> . . . We are now faced with a situation where we have a child who has been in care for 26 months. We have parents who have never increased their visitation beyond a very limited visit. . . .
>
> Both parents have always focused on themselves and have not focused on putting themselves in a position to parent this child. They have had ongoing issues, and the issues are unresolved. There are drug issues regarding both parents.
>
> Notwithstanding their testimony that they are not currently under the influence of drugs, I find that on the most important day of their lives regarding their parental rights of this child, they fail to show up with any documents which convince me that they have resolved their drug issues.
>
> [Father] gives the appearance of someone who might be under the influence, although he says he's got ADHD. I'm not convinced that's the only issue. . . .
>
> . . . When there is a contradiction between the evidence that the parents present and that the Department presents, I choose to believe the evidence that the Department presents. It is consistent throughout the life of this case.

- 10 -

Ms. Giles has been on this case virtually from the beginning and she has a good grasp of the issues in this case, and she has an ability to observe the child and the parents, and she has observed and she's taken pains to observe. She has seen more than we all have seen because she's been so close to the case, and she sees no parental bond between the parents and the child.

In fact, the parents admit that they have no parental bond with this child, and where they don't, and I think the testimony of father, in particular was made up and not believable. There is no relationship between the father and child other than a casual acquaintance.

. . . Both [parents] are employed, yet I heard no testimony about them supporting this child in any way.

Father appears to be a land baron, and I say that word facetiously, but he says he owns a number of properties and that he enjoys rental income. . . . [His tax return] shows that Father had a payment of $15,000 in 2020, yet I haven't heard one word of evidence that he gave a nickel to his child. He keeps moving around, preventing the Department from identifying a residence which would be stable, safe, and secure for the child.

. . . All that this reminds me of is the guidance that our Pennsylvania Supreme Court has given us, and that guidance is that the child does not have to wait until the parents decide they want to parent this Child.

(N.T. Hearing, 4/20/21, at 50-53).

After review, we conclude the record establishes that Father falls within the ambit of Section 2511(a)(1) by failing to carry out his parental responsibilities. Child has not resided with Father since June 2018 due to Father's drug abuse and other issues. Although Father represented that he "tr[ies] to take advantage of every minute" he has with Child, he attended only 12 of 20 offered supervised visits. (*Id.* at 23). During the visits he did attend, he exhibited erratic behavior signaling that he was under the influence.

Concerningly, he displayed hostile behavior towards Child by speaking angrily to her, cursing and attempting to spank her, despite the supervised setting and his awareness he was being monitored and his parenting skills assessed.

Additionally, Child has been well taken care of by Foster Parents and she views then as her caretakers, calls them "Mom and Dad," and looks to them for love and support. The trial court made a credibility determination in favor of Ms. Giles whose testimony it found truthful and based on careful observation in contrast to Father's testimony, which it found self-serving and dishonest. The court was "free to believe all, part, or none of the evidence presented" and its findings are fully supported by the record. *See In re Q.R.D.*, *supra* at 239. We discern no abuse of discretion in the court's termination ruling.

**B.**

Father also challenges the trial court's decision to change Child's placement goal to adoption. Because our finding that termination was appropriate renders this issue moot, we affirm the order changing Child's permanency goal to adoption. *See Interest of A.M.*, *supra* at *6 (stating our decision to affirm court's termination decree necessarily renders moot its ruling changing Child's goal to adoption).

Nonetheless, even if we were to reach the merits of this issue, we would conclude that no relief is due.[3]

> The Juvenile Act governs proceedings to change a child's permanent placement goal. 42 Pa.C.S. §§ 6301-6375. Trial courts must apply the following analysis:
>
> Pursuant to 42 Pa.C.S. § 6351(f) of the Juvenile Act, when considering a petition for a goal change for a dependent child, the trial court is to consider, *inter alia*: (1) the continuing necessity for and appropriateness of the placement; (2) the extent of compliance with the family service plan; (3) the extent of progress made towards alleviating the circumstances which necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal for the children; (5) a likely date by which the goal for the child might be achieved; (6) the child's safety; and (7) whether the child has been in placement for at least fifteen of the last twenty-two months. The best interests of the child, and not the interests of the parent, must guide the trial court. As this Court has held, a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.

***Interest of D.R.-W.***, ***supra*** at 917-18 (case citations omitted).

In this case, the trial court did not abuse its discretion by changing Child's goal to adoption. As explained in detail, although Father has a "fun bond" with Child, he has taken on no parental role and has shown no initiative in being actively involved in her care. In addition, all of Child's needs are being well met by Foster Parents who she looks to for comfort and love and with whom she shares a strong bond. Foster Parents have attended therapy with Child to address her previously difficult behavior which has improved

---

[3] We review placement goal change orders for an abuse of discretion. ***See Interest of D.R.-W.***, ***supra*** at 917.

significantly since she has been in their care. It is clear that changing the placement goal to adoption is in Child's best interests. Accordingly, for the reasons set forth in this memorandum, we affirm the termination decree and goal change order of the trial court.

Decree affirmed. Order affirmed.

Judge Bowes joins the memorandum.

Judge Dubow did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/4/2021